## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Viktors Ginters and Rochelle Ginters,                    Civil No. 07-4681 (DWF/LIB)

                    Plaintiffs,

v.                                                        **MEMORANDUM**
                                                          **OPINION AND ORDER**

Sharon Dooley, District Director, Citizenship
and Immigration Services; Alejandro
Mayorkas, Director, Citizenship and
Immigration Services; Janet Napolitano,
Secretary, Department of Homeland Security;
Eric H. Holder, Jr., United States Attorney
General,

                    Defendants,

_____

Dyan Williams, Esq., and Herbert A. Igbanugo, Esq., Igbanugo Partners Int'l Law Firm,
PLLC, counsel for Plaintiffs.

Friedrich A. P. Siekert and Lonnie F. Bryan, Assistant United States Attorneys, United
States Attorney's Office, counsel for Defendants.

_____

## INTRODUCTION

This matter is before the Court on cross motions for summary judgment brought

by Plaintiffs Viktor and Rochelle Ginters (the "Ginters") and Defendants Sharon Dooley,

Alejandro Mayorkas, Janet Napolitano, and Eric H. Holder, Jr. (the "Federal

Defendants").  For the reasons set forth below, the Court denies the Ginters' motion and

grants the Federal Defendants' motion.

**BACKGROUND**

Plaintiff Viktors Ginters ("Viktors") is a citizen of Latvia, where he currently resides after his removal by the United States government in March 2006. (Compl. ¶¶ 7-8.) Plaintiff Rochelle Ginters ("Rochelle") is a United States citizen who has been married to Viktors since May 9, 1998. (*Id.* ¶ 7.) On February 6, 2006, Rochelle filed a Form I-130 petition for Viktors. (*Id.* ¶ 19.) This was Rochelle's second such petition, and the third overall filed on behalf of Viktors. (*Id.* ¶¶ 19, 37.)

A Form I-130 petition is the first step in the process whereby a United States citizen may apply for an immigrant visa for their non-citizen spouse from Citizen and Immigration Services (the "Service" or "USCIS").[1] (*Id.* ¶¶ 26, 27.) The first Form I-130 filed on behalf of Viktors was filed by Denise Harris ("Denise"). (*Id.* ¶37.) Viktors and Denise had married on September 21, 1996, just over a month before Viktors' visa was to expire on October 26, 1996. (Administrative R. at 1164-65.) On or about November 18, 1996, Denise signed an I-130 petition on Viktors' behalf, which the Service marked received on March 11, 1997.

On October 20, 1997, the Service received a letter from Denise. (*Id.* at 1156-59.) In the letter, Denise stated that Viktors had told her "that the only reason he married me was to stay in the United States, and to stay out of the Latvian Military." (*Id.* at 1157.)

---

[1]   USCIS took over many of the functions from the legacy Immigration and Naturalization Service ("INS") on March 1, 2003. In this Memorandum Opinion, the Court will not differentiate between USCIS and legacy INS and will instead refer to both entities as "USCIS" or the "Service."

Denise stated that the marriage had never been consummated, that Viktors had become physical, that Viktors had moved out of their apartment in January 1997, and that he had attempted to bribe her with $1,000 "to go to INS and lie to INS for him by telling them how happy we are, that we live together, we share expenses." (*Id.* at 1157-58.) On December 1, 1997, Denise submitted a notarized withdrawal of the Form I-130 that she had earlier submitted. (*Id.* at 1155.) Viktors and Denise were divorced on March 16, 1998. (*Id.* at 999-1003.)

Less than two months later, on May 9, 1998, Viktors married Rochelle. (*Id.* at 1004.) Rochelle then filed an I-130 petition on Viktors' behalf on June 10, 1998. (*Id.* at 1040-42.) On August 12, 1998, Viktors testified under oath before an immigration official regarding the petition. (*Id.* at 1115.) When asked why he married Denise, Viktors stated: "I was about to sign a document for asylum and stuff, because I couldn't go to Latvia. I was trying to stay in America because it was very bad there and stuff." (*Id.* at 1123.) He also admitted that the marriage was never consummated. (*Id.*) A Notice of Intent to Deny ("NOID") the second I-130 was issued on September 21, 1998. (*Id.* at 980-83.) The NOID stated that "the Service finds that there is substantial and probative evidence to establish that the first marriage of [Viktors] was a sham entered into for immigration benefits only, rather than to establish a life together for love and affection." (*Id.* at 983.) The Ginters were given thirty days to offer written evidence in rebuttal. (*Id.*) Rochelle submitted a response on October 21, 1998. (*Id.* at 1048-50.) The petition was denied on April 27, 1999. (*Id.* at 979.)

Rochelle appealed the denial to the Board of Immigration Appeals ("BIA") on

May 27, 1999.  (*Id.* at 1068-69.)  The BIA dismissed the appeal in an order dated

March 24, 2000.  (*Id.* at 968-73.)  The BIA found "that the record supports the district

director's conclusion that the beneficiary's prior marriage to Denise Ginters, a United

States citizen, was entered into for the primary purpose of circumventing the immigration

laws."  (*Id.* at 969.)

Viktors was removed to Latvia on March 21, 2006.[2]  Just before his removal,

Rochelle filed the current I-130 petition, Viktor's third overall and the second by

Rochelle, in February 2006.  (*Id.* at 258-78.)  This petition was based in part on an

affidavit by Denise, dated February 17, 2006, in which she attempted to retract much of

the content of her October 1997 letter.  (*Id.* at 1397-1409.)  An investigation was opened,

and an agent spoke with Denise in June 2006.  (*Id.* at 421.)  Denise indicated at that time

that she had memory problems.  (*Id.*)  She indicated that she remembered writing the

letter in 1997, but could not remember dates or details.  (*Id.*)  An agent also spoke with

Denise's husband, Chris Harris, who stated that he began dating Denise in July 1997, that

he helped Denise write the October 1997 letter, that it was all true, and that Viktors

---

[2]     Viktors was placed in removal proceedings on February 9, 1998.  (Administrative
R. at 1270.)  Viktors then applied for asylum on September 22, 1998.  (*Id.* at 1275-87.)
The Immigration Judge denied the asylum application on May 20, 2002 and was affirmed
by the BIA on December 3, 2003.  (*Id.* at 1252, 1264.)  Viktors submitted a petition for
review of the BIA order to the Eighth Circuit, which was denied on November 3, 2005.
(*Id.* at 1243-48.)

offered him $10,000 to get Denise to go to the Service and tell them that she was married

to Viktors.  (*Id.* at 422.)

On December 1, 2006, the Service issued a Notice of Intent to Deny ("NOID") the

third I-130 petition.  (*Id.* at 144-50.)  The NOID contained the following analysis of

Denise's October 1997 letter and February 2006 affidavit:

> Initially, [Denise] contacted the Service to report fraud on two separate
> occasions by way of written letter.  [Denise's] retraction statement is
> suspect for the following reasons:
>
> (1)  She retracted her statements nearly ten years after they were initially
>      given.
> (2)  The timing of the retraction is suspect since [Viktors] was facing
>      impending removal from the United States when [Denise] completed
>      the affidavit.
> (3)  The retraction has less merit than her initial truthful statement since
>      [Denise] has indicated she felt remorse for the situation that [Viktors]
>      is currently in, and may have felt that her avenue of assistance was to
>      attempt to retract her initial truthful statement.
> (4)  It is noted in her retraction that [Denise's] initial statements were
>      motivated by the fact she was bitter and resentful of [Viktors] for their
>      breakup.  It is unlikely those were her motives in light of the
>      statements of [Denise's] current spouse revealing that he and [Denise]
>      had already been involved in a romantic relationship for three months
>      at the time she composed the initial letter to the Service.
> (5)  The content of her retraction is suspect because while the initial
>      statements were detailed and included specific acts, in a recent phone
>      conversation with a Service officer [Denise] now claims she cannot
>      recollect dates or details due to mental health issues.
> (6)  A recent phone conversation between [Denise's] current husband and
>      a Service officer corroborates [Denise's] initial claims that [Viktors]
>      offered money to induce her to lie to the Service.
> (7)  The statements in [Denise's] initial letters appear more likely to be
>      truthful than her statements in the recent affidavit in light of the fact
>      that Chris Harris has asserted that he was offered $10,000 to persuade
>      [Denise] to mislead the Service.
>
> The Service finds the initial statements made by [Denise] to be credible.
> The Service questions the retraction because the initial statements appear to

5

> be consistent with the facts and the timing of the retraction is suspect since
> it was received when [Viktors'] removal was imminent.  An inference
> cannot be drawn that the information is now accurate simply because the
> declarant retracts her previous statement.
>
> The initial statements and retractions have been reviewed and considered.
> Greater weight must be given to the initial statements for the reasons shown
> above.

(*Id.* at 148-49.)  The NOID gave Rochelle thirty (30) days to offer written evidence in

rebuttal.  (*Id.* at 150.)

Rochelle responded to the NOID on January 2, 2007.  (*Id.* at 137-43.)  She also

submitted additional affidavits from Denise and Chris Harris.  (*Id.* at 423, 423(a).)  Chris

Harris's affidavit stated that he "reviewed the content of my wife's affidavit, dated

February 2006, and the content is true to the best of my knowledge and my wife's

knowledge."  (*Id.* at 423.)  Denise's affidavit stated:  "My affidavit, dated February 2006,

recanting my letter from ten years ago is honest, accurate and truthful to the best of my

knowledge, so help me God."  (*Id.* at 423(a).)  The Service considered the submissions

and then denied the third I-130 petition on January 26, 2007, concluding that "[a]fter

re-examining the entire body of evidence in this case, the Service must place greater

weight to [sic] the evidence contained in the record during the proceedings which support

the conclusion that the marriage was entered into by fraud."  (*Id.* at 123.)

On February 21, 2007, Rochelle appealed the denial to the BIA.  (*Id.* at 126.)  The

BIA dismissed the appeal and stated the following:

> Ultimately, the issue in this matter is whether to believe that the factual
> claims made by [Denise] in her February 17, 2006, retraction are true, or
> whether her October 20, 1997, statement is true and her claims in her
> retraction are false.  Based on the evidence of record, the Board believes

that her October 20, 1997, statement is accurate.  Her retraction carries less
weight in that it was submitted over 8 years later, when the details are not
as fresh in her memory and where she appears to be influenced by her
sympathy to the plight of the beneficiary and his family.

(*Id.* at 4.)  The BIA also noted that:

[T]he determination of prior marriage fraud did not rest solely on the
statement by [Denise] but on an examination of the entire record, including
the timing of the marriage shortly before the beneficiary was supposed to
leave the country, the short duration of the marriage, the fact that the
marriage was never consummated, and [Viktors'] attempts to persuade
[Denise] to go forward with the visa petition.

(*Id.* at 5.)  The BIA concluded that it "agrees that the evidence of record supports a

finding that [Viktors] previously entered into a sham marriage for the purpose of

obtaining an immigration benefits, [sic] and the approval of any marriage-based visa

petition on his behalf is barred under section 204(c) of [the Immigration and Nationality

Act]."  (*Id.*)

On November 27, 2007, the Ginters initiated this action for judicial review.  The

parties have now moved for summary judgment.  The Court addresses the motions below.

## DISCUSSION

## I.      Summary Judgment Standard

Summary judgment is proper if there are no disputed issues of material fact and

the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The

Court must view the evidence and the inferences that may be reasonably drawn from the

evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank*

*of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated,

"[s]ummary judgment procedure is properly regarded not as a disfavored procedural

shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.    Scope of Review

The Ginters' claims are brought under the judicial review provisions of the Administrative Procedure Act ("APA"). Under the APA, the reviewing court must affirm an agency decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (2)(A). *See also Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 375 (1989); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). The Court considers whether defendants considered the relevant factors and whether they made a "clear error of judgment." *Motor Vehicles*, 463 U.S. at 43. This standard of review is narrow and gives agency decisions a high degree of deference. *Sierra Club v. Envtl. Prot. Agency*, 252 F.3d 943, 947 (8th Cir. 2001). An agency's rule is arbitrary and capricious if it (1) relied

on factors Congress did not intend it to consider; (2) "entirely failed to consider an important aspect of the problem"; (3) offered an explanation that runs counter to the evidence before the agency; or (4) "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicles*, 463 U.S. at 43.

The Immigration and Naturalization Act ("INA") permits United States citizens to apply for an immigrant visa for their non-citizen spouses. 8 U.S.C. § 1151(2)(a)(i) (defining "immediate relatives" to include spouses of citizens); 8 U.S.C. § 1154(a) (permitting any United States citizen claiming that an alien is entitled to immediate relative status to file petition). After the petition is filed, the government must conduct an investigation. If the government then determines that the facts stated in the petition are true and the alien is an immediate relative, the petition must be approved. 8 U.S.C. § 1154(b). If, however, "the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States . . . by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws," the petition cannot be approved. 8 U.S.C. § 1154(c). The pertinent regulations provide that "[t]he director will deny a petition for immigrant visa classification filed on behalf of any alien for whom there is substantial and probative evidence of such an attempt or conspiracy." 8 C.F.R. § 204.2(a)(1)(ii).

## III.   Denial of the Third I-130 Petition

The Ginters assert that the denial of Rochelle's second I-130 petition, the third filed on Viktors' behalf, is arbitrary, capricious, and an abuse of discretion because it

disregards the sworn affidavit of Denise recanting her October 2007 letter.  The Ginters

assert that the Service failed to distinguish between a failure to produce affirmative

evidence of the bona fides of a marriage and the substantial and probative evidence

required to demonstrate marriage fraud.  They acknowledge that "[a]rguably, the Service

did not have grounds . . . to approve [Rochelle's] first Form I-130 petition for [Viktors]

when they did not have an explicit and full recantation from [Denise]," but contend that

the decision to deny Rochelle's second Form I-130 "in spite of all the evidence

undermining the marriage fraud finding" is arbitrary and capricious.  (Doc. No. 71

at 26-27.)  The Ginters rely in part on *Sabhari v. Frazier*, No. 06-cv-196, 2007 WL

295261 (D. Minn. Jan. 30, 2007), in which the Court ordered the Service to grant an

I-130 petition and stated that "[i]t was arbitrary, capricious, and an abuse of discretion for

the [Service] to hold steadfastly to their previous sham marriage determination in the face

of recantations from the family members that initially cast doubt on the Sabharis'

marriage, and strong evidence that the Sabharis' marriage is bona fide."  *Id.* at *13.

The Federal Defendants assert that the Service's denial of the third I-130 was not

arbitrary and capricious because the Ginters were provided with a reasoned explanation

based on record evidence.  The Federal Defendants argue that the Court may not

substitute its judgment for that of the agency, and that the Court's review is confined to

the question of whether the USCIS and the BIA properly found that the record contained

substantial and probative evidence of marriage fraud.

The Federal Defendants contend that the denial of Rochelle's first I-130 was

properly based on the Denise's statements in 1997, Viktor's own sworn admissions in his

August 12, 1998 interview, and other evidence or the lack thereof.  They assert that the evidence submitted in connection with Rochelle's second I-130, the Service's denial of which is currently before the Court, was essentially the same except for the February 2006 attempted recantation.  The Federal Defendants argue that the USCIS and the BIA gave reasonable explanations as to why the 1997 statements were more credible than the 2006 recantation and that this decision was neither arbitrary nor capricious.  The Federal Defendants assert that the finding of marriage fraud was supported by substantial and probative evidence.

The Court agrees.  The essence of the parties' dispute is the February 2006 attempted recantation by Denise.  The Ginters argue that with the recantation, there no longer exists substantial and probative evidence upon which to base a finding of marriage fraud.  The Federal Defendants argue that the Service considered the February 2006 affidavit and found that it was less credible than the October 1997 statement.  In reviewing the agency decision, the Court is not permitted to re-weigh the evidence, but is instead limited to determining whether the agency's determination that the record contained substantial and probative evidence of marriage fraud was arbitrary and capricious.  The Court, having thoroughly reviewed the record in this action, cannot conclude that the Service's decision was arbitrary and capricious.  The Service was permitted to make the credibility determination that the October 1997 statement was more reliable than the February 2006 attempted recantation.

The Court's conclusion is not altered by the *Sabhari* case relied on by the Ginters.  Although *Sabhari* also involved three I-130 petitions, they all related to a single

11

marriage. *Sabhari*, 2007 WL 295261 at *1-4. The statements disparaging the Sabharis' marriage and on which the initial denial was based were made by members of Sabhari's family, as opposed to the citizen spouse. *Id.* at *1-2. The allegedly fraudulent marriage had lasted ten (10) years, whereas here Viktors moved out approximately four months after marrying Denise. *Id.* at *5. Each of these facts distinguishes the situation currently before the Court from that presented in *Sabhari*, and that decision is therefore inapposite.

The Court thus concludes that the Service's denial of the second I-130 petition submitted by Rochelle was not arbitrary and capricious. The Federal Defendants are therefore entitled to summary judgment on the Ginters' claim for judicial review of that denial.

## CONCLUSION

Accordingly, based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

1.      The Ginters' Motion for Summary Judgment (Doc. No. [69]) is **DENIED**; and

2.      The Federal Defendants' Motion for Summary Judgment (Doc. No. [64]) is **GRANTED**; and

3.      The Ginters' Complaint (Doc. No. [1]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  July 20, 2011                    s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          United States District Judge